**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

FAHAD GHAFFAR,

<em>Plaintiff</em>,

- against -

PAULSON PRV HOLDINGS, LLC,

<em>Defendant</em>.

No. 3:23-cv-01528-SCC

## PLAINTIFF'S OPPOSITION TO DEFENDANT PAULSON PRV HOLDINGS, LLC'S MOTION TO DISMISS THE COMPLAINT AND, ALTERNATIVELY, STAY ALL PROCEEDINGS PENDING ARBITRATION

Harold D. Vicente-Colón
USDC -PR 211805
Harold D. Vicente Gonzalez
USDC-PR 117711
Vicente Law LLC
Capital Center Sur Ph1-1201
239 Arterial Hostos
Hato Rey
Tel. (787) 751-8000
Fax (787) 756-5250
hdvc@vclawpr.com

José A. Andréu-Fuentes
USDC-PR 204409
Alfredo M. Umpierre-Solor
USDC-PR 226205
Andréu & Sagardia
261 Ave. Domenech
San Juan, PR 00918-3518
787.754.1777
jaf@andreu-sagardia.com

RUSSO PLLC
Martin P. Russo (Pro Hac Vice)
Robert Sidorsky (Pro Hac Vice)
Daniel Branower (Pro Hac Vice)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com

FARRELL FRITZ, P.C.
Peter A. Mahler (Pro Hac Vice)
622 Third Avenue, Suite 37200
New York, New York 10017
(212) 687-1230

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.   Allegations of the Complaint ................................................................................ 3

    B.   PRV Refuses to Arbitrate ...................................................................................... 5

    C.   The SPL Defines "Paulson" to Encompass PRV and Imposes Contractual Obligations on Paulson Collectively ......................................................................................... 6

ARGUMENT ........................................................................................................................... 8

  I.    THE COMPLAINT STATES A CLAIM FOR ALL CAUSES OF ACTION ................... 8

    A.   The Applicable Standard on a Motion to Dismiss ......................................................... 8

    B.   PRV Is a Party to the SPL .................................................................................... 8

    C.   Plaintiff's Claims Against PRV Are Not Barred by the SPL ......................................... 11

    D.   The Complaint States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ....................................................................................................... 13

    E.   The Complaint States a Claim for Unjust Enrichment .................................................. 15

  II.   PLAINTIFF'S CLAIMS SHOULD NOT BE STAYED PENDING ARBITRATION .... 16

CONCLUSION ..................................................................................................................... 20

## Table of Authorities

Page(s)

Cases

*A.D.E. Sys., Inc. v. Quietside Corp.*,
   188 A.D.3d 762 (N.Y. App. Div. 2020) .................................................................. 14

*A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*,
   15 Misc.3d 196 (Sup. Ct. N.Y. Cty 2007) .............................................................. 11

*AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgmt., LLC*,
   214 A.D.3d 111 (N.Y. App. Div. 2023) .................................................................. 14

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999) ................................................................................... 17

*Beardslee v. Inflection Energy, LLC*,
   904 F. Supp.2d 213 (N.D.N.Y. 2012) .................................................................... 13

*Bridas v. Gov't of Turkmenistan*,
   345 F.3d 347 (5th Cir. 2003) .................................................................................. 16

*Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*,
   943 F.2d 220 (2d Cir. 1991) ................................................................................... 19

*CoraMed USA, LLC v. Alexion Pharms., Inc.*,
   No. 20-CV-2052-SJB, 2023 WL 6302297 (E.D.N.Y. Sept. 27, 2023) .............. 14, 15

*E. Ramapo Cent. Sch. Dist. v. New York Sch. Ins. Reciprocal*,
   199 A.D.3d 881 (N.Y. App. Div. 2021) .................................................................. 13

*EPAC Techs. Ltd. v. Interforum S.A.*,
   217 A.D.3d 623 (N.Y. App. Div. 2023) .................................................................. 10

*F&R Goldfish Corp. v. Furleiter*,
   210 A.D.3d 643 (N.Y. App. Div. 2022) .................................................................. 14

*First Equity Realty v. Harmony Grp., II*,
   68 Misc.3d 1216(A), 130 N.Y.S.3d 262 (Sup. Ct. N.Y. Cty 2020) ......................... 9

*Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.*,
   No. 05-CV-7776, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) ............................ 10

*In re 215-219 W. 28th St. Mazal Owner LLC*,
   177 A.D.3d 482 (N.Y. App. Div. 2019) .................................................................. 18

*In re Adelphia Commc'ns Corp.*,
  638 B.R. 506 (Bankr. S.D.N.Y.) ............................................................. 10

*Ithaca Cap. Invs. I, S.A. v. Trump Panama Hotel Mgmt. LLC*,
  No. 18 CIV. 390 (ER), 2019 WL 10948746 (S.D.N.Y. Mar. 19, 2019) .................................. 17

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
  255 F. Supp.3d 443 (S.D.N.Y. 2015) ......................................................... 10

*LaRoss Partners, LLC v. Contact 911 Inc.*,
  874 F. Supp.2d 147 (E.D.N.Y. 2012) .......................................................... 17

*Lass v. Bank of America, N.A.*,
  695 F.3d 129 (1st Cir. 2012) ................................................................. 16

*Marrero v. Presbytarian Cmty. Hosp. Inc.*,
  No. CV 14-1922 (DRD), 2016 WL 7665777 (D.P.R. Mar. 28, 2016) .................................... 8

*MBIA Ins. Corp. v. Royal Bank of Canada*,
  706 F. Supp.2d 380 (S.D.N.Y. 2009) ........................................................ 9, 11

*McCarthy v. Am. Int'l Grp., Inc.*,
  283 F.3d 121 (2d Cir. 2002) ................................................................. 13

*Mercado-Vazquez v. Olivera*,
  No. CV 21-1620 (CVR), 2022 WL 11258470 (D.P.R. Oct. 18, 2022) ................................... 8

*Midtown Candy Co. v. Helmsley-Spear, Inc.*,
  160 A.D.2d 484 (N.Y. App. Div. 1990) ........................................................ 11

*Misek v. Downstairs Cabaret Theatre, Inc.*,
  906 N.Y.S.2d 439 (N.Y. City Ct. 2010) ....................................................... 10

*Schatzki v. Weiser Cap. Mgmt., LLC*,
  No. 10 CIV. 4685 RWS, 2015 WL 6206438 (S.D.N.Y. Oct. 16, 2015) .................................. 19

*Stier v. Girl Scouts of the USA*,
  383 F.3d 7 (1st Cir. 2004) ................................................................... 19

*Stryker Sec. Grp. Inc. v. Elite Investigations Ltd.*,
  170 A.D.3d 553 (N.Y. App. Div. 2019) ........................................................ 11

*Thompson Bros. Pile Corp. v. Rosenblum*,
  121 A.D.3d 672 (N.Y. App. Div.2d Dep't 2014) ............................................... 16

*Wilmington Sav. Fund Soc'y, FSB v. Rosado-Munoz,*
  No. CV 17-1880 (ADC), 2018 WL 1115678 (D.P.R. Feb. 27, 2018) ...................................... 8

<u>Statutes</u>

9 U.S.C. § 3 (1988) ................................................................................................................... 19

<u>Rules</u>

Fed. R. Civ. P. 8(d) ................................................................................................................... 16

<u>Regulations</u>

17 C.F.R. § 230.405 ..................................................................................................................... 9

Plaintiff Fahad Ghaffar ("Plaintiff" or "Ghaffar"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Paulson PRV Holdings, LLC's ("Defendant" or "PRV") motion to dismiss the complaint or, in the alternative, to stay all proceedings pending arbitration.

## PRELIMINARY STATEMENT

As detailed below, the allegations of the Complaint are well-founded and Defendant's strident assertion that Ghaffar makes knowingly false allegations is the furthest thing from the truth. Defendant's motion to dismiss rests on the fundamental misconception that only a signatory may be bound by the terms of an agreement, when it is black letter law that a non-signatory such as PRV can be held liable for breach of contract where, as in this case, the terms of the agreement clearly bind PRV and PRV incontestably assumed and performed obligations under the contract. Here, the Special Payment Letter Agreement ("SPL"), dated April 23, 2019, was signed by Ghaffar and John Paulson, as President of Paulson & Co. Inc. ("P&C"), the parent of PRV. The SPL by its terms established obligations owed to Ghaffar by "Paulson," broadly and collectively defined to cover P&C *together with* PRV and their respective affiliates, as consideration for the highly valuable services and benefits directly provided by Ghaffar to PRV. Moreover, PRV, as an affiliate and subsidiary controlled by P&C, accepted and assumed payment obligations under the SPL. More than 95% of the payments made to Ghaffar during the last 36 months were paid directly by PRV and PRV owned assets until, as set forth in the Complaint, John Paulson wrongfully terminated the SPL based on trumped up allegations of misconduct by Ghaffar in a transparent attempt to deprive Ghaffar of the payments owed to him under the SPL. *See* Point I.B.

PRV is also bound by the arbitration provision of the SPL, which by its terms expressly encompasses PRV within the overarching definition of Paulson, and pursuant to principles of

1

contract law.  The Complaint thus soundly asserts up front that PRV has refused to honor its contractual obligations to arbitrate.  Dkt. 1 (Cmplt), at ¶ 1.  After refusing to arbitrate, notwithstanding PRV's inextricably deep-rooted involvement in the investments that are the subject of this dispute, PRV has no cause to complain that it finds itself as a defendant in federal court.  And while Defendant rails against the allegations in the Statement of Claim filed in the arbitration having now come to light in the public record, that is a foreseeable consequence entirely of Defendant's own choosing, having refused to appear in the arbitration and failed to raise its jurisdictional defense in that forum.

Accordingly, as set forth below, Defendant's arguments seeking dismissal of the Complaint's first three causes of action for breach of contract, anticipatory breach, and breach of the implied covenant of good faith and fair dealing are devoid of merit because PRV is a party to the SPL.  Nor is there any basis for dismissing those claims based on the terms of the SPL.  *See* Point I.C.  Defendant's remaining arguments can also be readily disposed.  Thus, as explained in Point I.D., the third cause of action for breach of the implied covenant of good faith and fair dealing is not duplicative of Plaintiff's other breach of contract claims.  Similarly, as set forth in Point I.E., the last cause of action for unjust enrichment is properly pled in the alternative and is not duplicative of the claim for anticipatory breach.

As set forth in Point II, Defendant's argument that, alternatively, this action should be stayed pending the arbitration proceeding, should also be rejected under the applicable standard because PRV's refusal to arbitrate constitutes bad faith and avoidance of its obligations under the SPL.  Defendant acknowledges that it has an identity of interest with P&C because the issues in the arbitration are the same, but PRV disingenuously disregards the language of the arbitration provision and the basic principles of contract law binding it to arbitrate under the SPL.  Having

refused to honor its obligation to arbitrate, Defendant is not entitled to the benefit of a stay because its contumacious conduct has hindered the progress of the arbitration and should not be rewarded.

**FACTUAL BACKGROUND**

**A.      Allegations of the Complaint**

After meeting John Paulson in 2013, Ghaffar began his work for Paulson's Puerto Rico venture by consulting on the acquisition and renovation of the St. Regis Hotel, the crown jewel of PRV's portfolio.  Cmplt ¶¶ 3, 16.  Ghaffar's success in this role led to his expanded responsibilities for PRV, and resulted in Ghaffar managing the acquisition, development, and/or renovation of dozens of luxury condominiums, hotels and other investments in Paulson's Puerto Rico portfolio, including the La Concha and Vanderbilt hotels.  *Id.* ¶¶ 3, 20.  In fact, by 2017, when it was apparent that Ghaffar's performance far exceeded his compensation, Ghaffar and Paulson entered into an Initial Agreement pursuant to which Ghaffar would receive 50% of the increase in value of Paulson's Puerto Rico assets between 2014 and 2019.  *Id.* ¶¶ 20-21.  In 2019, in lieu of making a payment of approximately $12 million based on the increase in value that Ghaffar brought to the St. Regis, La Concha, and Vanderbilt hotels, as contractually required under the Initial Agreement, Paulson again renegotiated the terms of Ghaffar's compensation, offering him profit sharing rights upon future liquidation events.  *Id.* ¶¶ 22-23.

On April 23, 2019, PRV entered into the SPL for the purpose of memorializing Ghaffar's right to payment from and entitlement to participate in the profits of the hotel and related ventures.  Cmplt ¶ 24.  The SPL provides that Ghaffar is entitled to three forms of payment as to each Investment: (a) Special Payments (Section 1[a]) equal to 10% of the profits from the disposition of an investment, (b) Yearly Payments (Section 1[c]) equal to 10% of the Net Distributable Cash Flows for that year, and (c) Sales Payments (Section 2[d]) as a percentage of certain sales.  *Id.* ¶ 25.  The SPL could only be terminated by Paulson or PRV for "Cause," narrowly defined as "acts

of intentional misconduct or fraud against Paulson." SPL § 3(b); Cmplt ¶ 26. Under the SPL, 50% of the Special Payments, Yearly Payments and Sales Payments owed to Ghaffar have "vest[ed] concurrently with the execution of the [SPL]," in April 2019, independently of whether Paulson purported to removed Ghaffar for cause or if Ghaffar voluntarily ceased providing services. SPL § 2(a)(i).

Ultimately, Ghaffar oversaw growth that generated hundreds of millions of dollars in increased annual revenues for PRV and which was expected to generate $1 billion in profits over the next four years. Cmplt ¶ 82. In June 2023, when Paulson and Ghaffar met to discuss their Puerto Rico investments and operations and Ghaffar reviewed the success of the various ventures, Paulson was apprised that Ghaffar would earn approximately $290 million pursuant to the SPL and other co-investment agreements. *Id*. ¶¶ 81-82. Rather than honor his contractual commitments, Paulson, upon realizing the value of the payments that would flow to Ghaffar, set about misappropriating Ghaffar's share of the earnings. *Id*. ¶ 83. Paulson thus directed that the SPL be terminated and after Ghaffar's services were terminated without cause, Paulson had PRV offer Ghaffar approximately half of what he was owed in exchange for the release of PRV, which Ghaffar refused. *Id*. ¶ 84. After Ghaffar rejected PRV's offer, Paulson resorted to false and pretextual allegations of "misconduct or fraud" by Ghaffar to purport to terminate the SPL based on "cause" and thereby avoid Paulson and PRV's payment obligations under the SPL. *Id*. ¶¶ 84-87; *see also* ¶¶ 91-92.

Accordingly, the Complaint sets forth claims for: (1) breach of contract based on PRV's failure to pay Ghaffar 5% of the sales upon disposition of ODR Building 3, pursuant to the SPL,

as amended (Cmplt ¶¶ 93-99)[1]; (2) anticipatory breach of the SPL based on PRV's repudiation of the SPL and its contractually-required payment of 5% of sales plus 10% of profits on investments listed in the SPL upon their disposition, as well as 10% of yearly distributions of the investments listed in the SPL (*id*. ¶¶ 101-06); (3) PRV's breach of the implied covenant of good faith and fair dealing by terminating the SPL on the basis of undisclosed and entirely pretextual findings of supposed "cause" so as to preclude Ghaffar from receiving compensation owed to him under the SPL (*id*. ¶¶ 108-10); and (4) unjust enrichment of PRV from Ghaffar's valuable management and services at Ghaffar's expense and without providing compensation to Ghaffar (*id*. ¶¶ 112-15).

### B. PRV Refuses to Arbitrate

On September 5, 2023, Plaintiff commenced an arbitration proceeding against P&C and PRV. PRV falsely asserts that on October 6, 2023, "Paulson & Co. and PRV responded to Ghaffar's Statement of Claim." Def. Br. at 6. In fact, PRV did not appear in the arbitration and only P&C filed a response. *See* Declaration of Andrew J. Urgenson, dated November 10, 2023 ("Urgenson Decl."), Ex. C (Dkt. 19-4). P&C, not PRV, claimed in a footnote in its response that "Paulson PRV Holdings Inc. is not a party to the arbitration agreement under which Claimant commenced this arbitration and does not consent to participate in this arbitration." *Id*., at n.1. After PRV, through P&C acting on its behalf, refused to consent to participate in the pending

---

[1] Defendant argues that "[n]othing in the emails cited by Ghaffar to support the existence of [the] alleged amendment" to which this claim refers "even mentions PRV, much less suggests that PRV was obligated to make any such payment." Def. Br., at 6. This argument is makeweight because the emails do not reference the specific entity that would be required to make the payments to Ghaffar because the entities are related and intertwined investment vehicles, and the emails instead addressed the substantive terms of such payments.

arbitration proceeding (and continues to maintain that it is not subject to the arbitration agreement),

Plaintiff commenced this action against PRV on October 19, 2023.[2]

### C.  The SPL Defines "Paulson" to Encompass PRV and Imposes Contractual Obligations on Paulson Collectively

On April 23, 2019, Ghaffar entered into the SPL setting forth his right to payments in

connection with PRV's investments.  Cmplt ¶ 24.  The Complaint straightforwardly sets forth that

"Paulson signed the SPL as the President of Paulson & Co., Inc., which, along with the Paulson

2009 Family Trust, is the owner of an entity known as Paulson Management IV, which in turn

owns PRV."  *Id*. ¶ 28.  Yet Defendant conspicuously omits the key language of the opening

paragraph of the SPL, which makes clear that the terms and conditions of the SPL encompass

investments made by PRV or other affiliates or subsidiaries of P&C, broadly defined as "Paulson"

for purposes of the SPL.[3]  Thus, the SPL states:

> This letter agreement (the "Letter Agreement") sets forth the terms and conditions
> of your right to a special payment in connection with certain investments *made by*
> *Paulson PRV Holdings ("PRV")* or other affiliates of Paulson & Co. Inc. ("P&C,"
> *together with PRV and their respective affiliates ("Paulson")*. (emphasis added).

The SPL in turn confers benefits and imposes obligations on Paulson, defined collectively

to include PRV.  In particular, Section 1(b) states: "The parties acknowledge and agree that Annex

A shall be updated each time *Paulson* and you mutually agree that you will provide services with

respect to an additional investment, *and any such update to Annex A must be signed by PRV and*

*you in order to be binding*."  (emphasis added).  The SPL also imposes a mutual non-disparagement

provision on Ghaffar and Paulson, defined to include PRV.  SPL § 10.

---

[2]  PRV perversely argues in its moving brief that Plaintiff should have sought to compel it to
arbitrate pursuant to JAMS Arbitration Rule 11(b), notwithstanding that PRV failed to appear in
the arbitration and did not raise any jurisdictional defense it is own right.

[3]  The SPL defines the "Paulson Entities" even more broadly, as encompassing "Paulson, its
affiliates and funds and accounts managed by Paulson and its affiliates."  SPL § 6.

Furthermore, PRV's obligations under the SPL included payment obligations to Ghaffar, such that a very large percentage of the payments made to Ghaffar pursuant to the SPL were made by PRV or its subsidiaries.[4]  The proportions of payments from PRV and non-PRV entities to Ghaffar are set forth in the following chart:[5]

| 2021 | |
|---|---|
| Payment from PRV Investment Vehicles | 89% |
| Payment from non-PRV Investment Vehicles | 11% |
| **2022** | |
| Payment from PRV Investment Vehicles | 100% |
| Payment from non-PRV Investment Vehicles | 0% |
| **2023** | |
| Payment from PRV Investment Vehicles | 100% |
| Payment from non-PRV Investment Vehicles | 0% |
| **Total 2021-2023** | |
| Payments from PRV Investment Vehicles | 97.5% |
| Payments from non-PRV Investment Vehicles | 2.5% |

Moreover, the SPL broadly sets forth the payments to which Ghaffar is entitled in the event that he "cease[s] providing services to *Paulson*."  *Id.* at § 3(a) (emphasis added).[6]

PRV's status as a party to the SPL is further evidenced by the arbitration clause contained therein.[7]  Thus, the arbitration clause covers all disputes between Ghaffar, on the one hand, and

---

[4] Defendant acknowledges that "Section (2(d) repeatedly refers to Paulson, as opposed to Paulson & Co." while seeking to avoid the conclusion that follows from the contractual requirement that PRV perform specified obligations for the benefit of Ghaffar, *i.e.*, that PRV is a party to the SPL. *See* Def. Br., at 4.

[5] Plaintiff can amend the Complaint to include this chart if the Court should deem it necessary.

[6] Defendant incorrectly asserts that "Ghaffar admits that Paulson & Co., not PRV, terminated him from providing services to Paulson."  Def. Br., at 5.  Rather, the Complaint pleads that Ghaffar "received a notice of termination of a Master Services Agreement ("MSA") between FG Hospitality and *certain P&C entities*."  Cmplt ¶ 86 (emphasis added).

[7] Section 5(c) of the SPL states: All disputes, claims, and controversies arising between you, on the one hand, and *Paulson*, on the other hand, concerning the construction, validity, enforcement and interpretation of this Letter Agreement (a "Dispute") in all respects shall be governed by and construed in accordance with the laws of the State of New York ….  Any Dispute shall be resolved

Paulson, defined to include PRV, on the other.[8]   Accordingly, the parties contemplated that PRV would be subject to and bound by an arbitration award pursuant to the express terms of the arbitration provision because it is a party to the SPL or in privity of contract.

## ARGUMENT

## I.   THE COMPLAINT STATES A CLAIM FOR ALL CAUSES OF ACTION

### A.   The Applicable Standard on a Motion to Dismiss

In adjudicating a motion to dismiss under Rule 12(b)(6), courts consider "'whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted.'"  *Wilmington Sav. Fund Soc'y, FSB v. Rosado-Munoz*, No. CV 17-1880 (ADC), 2018 WL 1115678, at *2 (D.P.R. Feb. 27, 2018).  To survive a motion to dismiss, the complaint must plead a plausible claim for relief, and does not need to establish a prima facie case.  *Id*.  "The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes 'pleaded facts to be true and read in a plaintiff's favor.'"  *Marrero v. Presbytarian Cmty. Hosp. Inc.*, No. CV 14-1922 (DRD), 2016 WL 7665777, at *3 (D.P.R. Mar. 28, 2016); *see also Mercado-Vazquez v. Olivera*, No. CV 21-1620 (CVR), 2022 WL 11258470, at *1-2, 3 (D.P.R. Oct. 18, 2022).

### B.   PRV Is a Party to the SPL

It is evident that PRV is a party to the SPL, which consistently employs the collective terms "Paulson" and/or "Paulson Entities" (each of which indisputably include PRV), because PRV has both rights and obligations that are contractually binding upon it under the SPL.  Accordingly, the

---

by binding arbitration ….   The arbitrator's award shall be final and binding upon you and *Paulson*.") (emphasis added).

[8]   It is telling that Defendant refers to the terms of the arbitration provision while omitting that it refers to disputes between Ghaffar and Paulson, as opposed to P&C, and that the award is binding on Ghaffar and Paulson, as opposed to P&C.  *See* Def. Br., at 4.

mere fact that the SPL was printed on P&C's letterhead, and consequently signed by John Paulson as President of P&C, is not determinative of whether PRV is properly deemed a party to the agreement.  The Complaint clearly alleges that the "action stems from the failure of PRV, through its control-person, John Paulson" (*id*. ¶ 2) to meet its contractual obligations, that John Paulson learned "PRV would owe Ghaffar $290 million for his work" (*id*. ¶ 5) and "directed PRV to terminate its services agreement with Ghaffar without cause" (*id*. ¶ 6).  The Complaint further alleges that the SPL "outlines in detail how PRV (and other Paulson & Co. Inc. affiliates) must pay Ghaffar a percentage of the profit on various of their Puerto Rico investments" (*id*. ¶ 19), among myriad other allegations demonstrating PRV's substantial role in performing under the terms of the SPL, including carrying out its obligations thereunder.  PRV's obligations under the SPL are also intertwined with those of the other Paulson affiliates collectively defined as Paulson.[9]

Defendant's overly simplistic argument, that PRV is a non-signatory to the SPL and ergo not a party, ignores the controlling criteria under New York law.  Thus, aside from holding a parent and subsidiary or affiliated corporations liable for the contractual obligations of the other based on the alter ego doctrine, "nonsignatories may be held liable for breach of contract, without being 'alter egos,' if their actions show that they are in privity of contract or that they assumed obligations under the contract.'"  *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp.2d 380, 397 (S.D.N.Y. 2009) (applying New York law).  *See also First Equity Realty v. Harmony Grp., II*, 68 Misc.3d 1216(A), 130 N.Y.S.3d 262 (Sup. Ct. N.Y. Cty 2020) ("the Letter Agreement impacted MAIP's obligations . . . [a]nd MAIP purported to perform the obligations created by the

---

[9]  Notably, the SEC defines an "affiliate of . . . a specified person" as "a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified."  17 C.F.R. § 230.405.  PRV readily satisfies this standard as an affiliate of both John Paulson and P&C.

agreements … Defendants' oversimplified argument — that as a non-signatory, MAIP cannot be held liable under the contract, full stop — fails to demonstrate entitlement to judgment on this issue as a matter of law."). Here, PRV was obligated to make the contractually required payments to Ghaffar or accepted and assumed the contractual obligations of P&C so as to bind PRV to the SPL. *See Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.*, No. 05-CV-7776, 2007 WL 1701813, at *5-6 (S.D.N.Y. June 12, 2007) (applying New York law).

PRV's role as a contractual party is further apparent because Defendant's argument, leaving only P&C liable under the contract, would render many of the SPL's provisions meaningless and/or unenforceable. *See Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp.3d 443, 457 (S.D.N.Y. 2015), *aff'd,* 650 F. App'x 70 (2d Cir. 2016) ("Under New York law, courts should avoid a contractual interpretation that renders an agreement illusory and unenforceable for lack of mutual obligation."); *Misek v. Downstairs Cabaret Theatre, Inc.*, 906 N.Y.S.2d 439, 445 (N.Y. City Ct. 2010) ("an interpretation of a contract that renders language in the contract meaningless or superfluous is unsustainable"); *In re Adelphia Commc'ns Corp.*, 638 B.R. 506, 514 (Bankr. S.D.N.Y.), *reconsideration denied,* 639 B.R. 657 (Bankr. S.D.N.Y. 2022) ("A court should not read a contract so as to render any terms, phrase, or provision meaningless or superfluous.").

As set forth above, the arbitration provision contained in the SPL further reinforces that PRV is a party to the SPL by specifically identifying the parties required to arbitrate as Ghaffar and Paulson, defined to include PRV, and further providing that the arbitrator's award is binding on both Ghaffar and Paulson, *i.e.*, P&C together with PRV. *See also EPAC Techs. Ltd. v. Interforum S.A.*, 217 A.D.3d 623, 624 (N.Y. App. Div. 2023) (applying "'closely related' doctrine—i.e., that '[a] non-signatory may also be bound by a forum selection clause where the

non-signatory and a party to the agreement have such a 'close relationship' that it is foreseeable that the forum selection clause will be enforced against the non-signatory'").

In any event, this issue is not appropriate for resolution on a motion to dismiss.  Here, the issue of whether PRV is bound by terms of the SPL requires resolution of disputed factual issues going to the relationship and allocation of contractual responsibilities as between PRV and P&C, as well as the interpretation of different provisions of the SPL read in the context of the contract taken as a whole.  Such mixed issues of fact and law are singularly unsuited for determination at the motion to dismiss stage.  *See MBIA Ins. Corp.*, 706 F. Supp.2d at 399 ("However tenuously Defendants think these allegations support a breach of contract claim against a non-signatory, the Court cannot say that it is legally or factually impossible that Plaintiffs can succeed on the merits of a contract claim under these theories.").[10]

Accordingly, Defendant's motion to dismiss the causes of action for breach of contract, anticipatory breach, and breach of the implied covenant of good faith and fair dealing, on the ground that PRV is not a signatory to the SPL, should be denied.

### C.        **Plaintiff's Claims Against PRV Are Not Barred by the SPL**

Defendant incorrectly asserts that "the SPL expressly states that Paulson & Co. is the *only* entity that could ever be obligated to make Special Payments or Yearly Payments to Ghaffar." Def. Br, at 10 (emphasis in original).  To the contrary, SPL Sections 1(a) and 1(c) state not only

---

[10]  Defendant's recitation of basic contract law principles does not alter this analysis, and its case law is otherwise distinguishable.  *See, e.g.*, *Midtown Candy Co. v. Helmsley-Spear, Inc.*, 160 A.D.2d 484, 485 (N.Y. App. Div. 1990) ("the parties negotiated, [but] they never entered into a lease" therefore "no binding agreement was ever reached."); *Stryker Sec. Grp. Inc. v. Elite Investigations Ltd.*, 170 A.D.3d 553, 555 (N.Y. App. Div. 2019) (declining to pierce corporate veil); *A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 15 Misc.3d 196, 204 (Sup. Ct. N.Y. Cty 2007) (same).

that Ghaffar "shall be entitled to receive from P&C" certain payments, but also that Ghaffar "shall be entitled to receive from P&C *or its designee*" these payments.  (emphasis added).  In straining to distance PRV from the terms of the SPL, Defendant fails to acknowledge that SPL Section 2(b) requires that Special Payments be made "[w]ithin 30 days after the date *PRV (or Paulson)* receives such payment in connection with the Disposition of an Investment."  (emphasis added).  In any event, Defendant's narrow interpretation of a payment clause, taken in isolation, is not determinative of the issue of whether P&C is the only party obligated to make Special Payments or Yearly Payments based on profits from investment dispositions and cash flows derived from an amalgam of investment vehicles operated by PRV.  As detailed above, PRV assumed responsibility for making payments pursuant to the SPL and consistently carried out that role in practice.

Defendant's argument that Ghaffar is ineligible for "Sales Payments" pursuant to Section 2(d) of the SPL because he is no longer providing services to Paulson is also bogus and raises a raft of contested factual issues.  The Complaint asserts in no uncertain terms that Ghaffar was wrongfully terminated based on fabricated allegations of misconduct and therefore the payment terms remain in full force and effect.  Cmplt ¶¶ 84, 85.  Furthermore, the reference to "cease providing services to Paulson," as set forth in SPL Section 3(a), is properly construed as referring to Ghaffar ceasing to provide services of his own accord or alternatively to termination for cause, as narrowly defined.[11]  Neither of those events occurred as Ghaffar did not cease providing services of his own volition and his purported termination for cause, as set forth in the Complaint, was under false pretenses in order for the Paulson entities to avoid their payment obligations under the

---

[11]  Defendant also refers to a provision of the MSA that provides that Ghaffar's services can be terminated at any time.  Def. Br., at 4 n.1.  As set forth in the Complaint, the MSA expressly states that its termination has no impact on the SPL, which remains in full force and effect.  Cmplt ¶¶ 89-90.

SPL. Furthermore, Ghaffar in any event is entitled to receive all payments, including Sales Payments, that had vested prior to termination. *See* SPL § 2(a) (providing that 50% of each Payment with respect to an Investment "shall vest concurrently with the execution" of the SPL and that "the remaining 50% shall vest upon the date of the Disposition of such Investment").

In sum, the Complaint alleges wrongful termination and the language of Section 3(a) is subject to competing interpretations, particularly when read in conjunction with Section 2(a), so as to preclude dismissal. *See Telerep, LLC v. U.S. Int'l Media, LLC*, 74 A.D.3d 401, 402 (N.Y. App. Div. 2010) ("If the court concludes that a contract is ambiguous, it cannot be construed as a matter of law, and dismissal … is not appropriate."); *Agor v. Bd. of Educ.*, 981 N.Y.S.2d 485, 487 (N.Y. App. Div. 2014). *See also McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) ("New York follows the well established *contra proferentem* principle which requires that 'equivocal contract provisions are generally to be construed against the drafter.'"); *Beardslee v. Inflection Energy, LLC*, 904 F. Supp.2d 213, 219 (N.D.N.Y. 2012), *aff'd*, 798 F.3d 90 (2d Cir. 2015) ("In the event of an ambiguity, a contract will be construed against its drafter since the drafter is responsible for any ambiguity.").

### D. The Complaint States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Under the applicable New York law, "implicit in every contract is an implied covenant of good faith and fair dealing." *E. Ramapo Cent. Sch. Dist. v. New York Sch. Ins. Reciprocal*, 199 A.D.3d 881, 884 (N.Y. App. Div. 2021). The implied covenant of good faith and fair dealing "is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *Id*. (internal quotation marks omitted). Claims for breach of the implied covenant of good faith and fair dealing are only duplicative of breach of

13

contract claims "when both arise from the same facts and seek the identical damages for each alleged breach …. But a claim for breach of the implied covenant of good faith and fair dealing is not duplicative when the claim depends on facts in addition to those that might support a breach of contract claim." *CoraMed USA, LLC v. Alexion Pharms., Inc.*, No. 20-CV-2052-SJB, 2023 WL 6302297, at *7 (E.D.N.Y. Sept. 27, 2023) (internal citations and quotation marks omitted) (holding that "CoraMed's breach of contract and breach of good faith claims are predicated, at least in part, on different facts and also seek different damages.").[12]

Contrary to Defendant's argument that Ghaffar's second claim for anticipatory breach of the SPL and third claim for breach of the implied duty of good faith and fair dealing are duplicative, these two claims are each based on different allegations and seek different relief. Thus, the Complaint alleges additional facts as the basis for the claim for breach of the implied covenant and separate damages that distinguish it from the other contract claims.

Specifically, the contract claim for anticipatory breach of the SPL seeks over "$236,861,648, plus 10% of future distributions from the La Concha and Vanderbilt Hotels" (Cmplt ¶ 105), representing Ghaffar's damages for breach of the SPL provisions requiring payment "upon their disposition [of] 5% of sales, plus 10% of profits on the investments listed in the SPL" as well as "10% of the yearly distributions of the investments listed in the SPL" (*id*. ¶¶ 102-03). The breach of good faith and fair dealing claim *separately* alleges a breach arising from Defendant's termination of the SPL based on the "undisclosed, wholly pretextual finding of

---

[12] *See also F&R Goldfish Corp. v. Furleiter*, 210 A.D.3d 643, 646 (N.Y. App. Div. 2022) ("the cause of action alleging breach of the implied covenant of good faith and fair dealing was not duplicative of the breach of contract cause of action since it alleged that the defendants engaged in additional conduct to realize gains from the plaintiffs, while depriving the plaintiffs of the benefits of the parties' agreements."); *AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgmt., LLC*, 214 A.D.3d 111, 133 (N.Y. App. Div. 2023) (same); *A.D.E. Sys., Inc. v. Quietside Corp.*, 188 A.D.3d 762, 764 (N.Y. App. Div. 2020).

'cause,' thereby precluding Ghaffar from receiving compensation pursuant to the SPL" (*id*. ¶ 109). And it seeks *different* damages consisting of "the value of the Special Payments, Yearly Payments, and Sales Payments due on the Remaining investments."[13]  *Id*. ¶ 110.  Accordingly, in this case, and in contrast to the cases cited by Defendant, "despite the overlap [with the breach of contract claim], the good faith claim depends on additional factual allegations of wrongful conduct, such that the two claims are not entirely duplicative" and, in any event, "resolution of the issue at this preliminary stage would be premature."  *CoraMed*, 2023 WL 6302297, at *8.

Finally, Defendant argues that the misconduct forming the basis for the claim of breach of the covenant of good faith and fair dealing was engaged in by P&C, not PRV, but that again misstates the Complaint.  Plaintiff does not "admit[] that Paulson & Co., not PRV, terminated him from providing services to Paulson" but rather Cmplt ¶ 86 alleges that "Ghaffar received a notice of termination of a Master Services Agreement ("MSA") between FG Hospitality and certain P&C entities."  Moreover, the allegations of the Complaint support the collective responsibility of P&C and PRV as closely related affiliates under the common control of John Paulson for Plaintiff's wrongful termination.  *See* Cmplt ¶¶ 91-92.  Defendant's attempt to separate itself from liability notwithstanding its central role and continuing obligations under the SPL should be rejected.  *See* section 1.B. *supra*.

### E.    The Complaint States a Claim for Unjust Enrichment

Defendant's argument that the existence of a contract between Ghaffar and P&C governing Ghaffar's "compensation for providing management services to Paulson" requires dismissal of the

---

[13] This is also clearly distinct from the breach of contract claim, which is based on the SPL provision requiring payment to Ghaffar of 5% of the sale price of ODR Building 3, which sold for $52,000,000, and seeks recovery of the $2,600,000 owed to Plaintiff as a result of that sale owed since February 2023, months prior to Ghaffar's termination.  Cmplt ¶¶ 95-97.

unjust enrichment claim is also unsound.  It is well-established that a plaintiff may pursue damages for both breach of contract and unjust enrichment at the pleading stage, and Fed. R. Civ. P. 8(d) explicitly permits alternative pleading.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Fed. Deposit Ins. Corp. v. Bernstein*, No. CV 89-2080, 1990 WL 198738, at *8 (E.D.N.Y. Nov. 2, 1990), *aff'd*, 944 F.2d 101 (2d Cir. 1991) ("Litigants in federal court may pursue alternative theories of recovery regardless of their consistency.").  *See also Lass v. Bank of America, N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *Thompson Bros. Pile Corp. v. Rosenblum*, 121 A.D.3d 672, 674 (N.Y. App. Div. 2014) ("where, as here, the existence of the contract is in dispute, the plaintiff may allege causes of action to recover for unjust enrichment and in quantum meruit as alternatives to a cause of action alleging breach of contract.").  Moreover, the anticipatory breach and unjust enrichment claims are not duplicative where the unjust enrichment claim alleges, independently of the contract claim, that PRV was enriched at Ghaffar's expense, having benefited greatly from Ghaffar's management and services without compensating Ghaffar (Cmplt ¶¶ 112-14), and pleads additional damages consisting of the "value of the Special Payments, Yearly Payments, and Sales Payments due on the Remaining Investments."  Cmplt ¶ 115.

Accordingly, Plaintiff's claim for unjust enrichment, which properly pleads the elements of that cause of action as an alternative to the contract claims and is not duplicative of the claim for anticipatory breach, cannot be dismissed at this stage.

## II.    PLAINTIFF'S CLAIMS SHOULD NOT BE STAYED PENDING ARBITRATION

As set forth above, Defendant refused to consent to arbitration, notwithstanding that the arbitration clause of the SPL expressly encompasses Paulson collectively, including PRV.[14]

---

[14]  Moreover, "federal courts have held that so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration."  *Bridas v. Gov't of Turkmenistan*, 345 F.3d

Nevertheless, having chosen not to arbitrate, Defendant seeks to improperly stay this action from proceeding.  Under the applicable case law, federal courts should grant a stay based on a pending proceeding in an arbitration only where, unlike here, "the movant demonstrates that it has not taken nor will take any steps to hinder the progress of the arbitration, that the arbitration will conclude within a reasonable time, and that any delay pending the arbitration will not cause undue hardship to the non-movant." *Ithaca Cap. Invs. I, S.A. v. Trump Panama Hotel Mgmt. LLC*, No. 18 CIV. 390 (ER), 2019 WL 10948746, at *2 (S.D.N.Y. Mar. 19, 2019) (internal quotation marks omitted). Furthermore, "[t]he movant bears a 'heavy burden' of showing necessity for the stay," which Defendant has also failed to meet by evading participation in the arbitration.  *Id*.

Far from honoring its contractual obligation to arbitrate this dispute and avoiding any steps that would hinder the progress of the arbitration, PRV evaded arbitration in bad faith, knowing it is a party to the arbitration provision under the umbrella definition of Paulson, is incontestably closely affiliated with and controlled by P&C, and benefited directly from the SPL and the highly profitable work performed by Ghaffar for PRV.  *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp.2d 147, 155 (E.D.N.Y. 2012) ("In a number of cases involving arbitration clauses, the Second Circuit has held that a non-signatory is estopped from denying its obligation to arbitrate when it received a 'direct benefit' from a contract containing an arbitration clause."); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (holding that defendant

---

347, 355 (5th Cir. 2003) (emphasis in original).  The Court in *Bridas* noted that "ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." *Id*. at 356.  Here, the terms of the arbitration agreement clearly bind PRV but courts have also recognized six distinct theories for binding a non-signatory to an arbitration agreement: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego theories, (5) estoppel, and (6) third-party beneficiary.  *Id*.

non-signatory who received direct benefits under the relevant contract is estopped from denying its obligation to arbitrate).

PRV failed to respond to Plaintiff's Statement of Claim or to appear at all in the arbitration, even for the limited purpose of disputing JAMS's jurisdiction over Plaintiff's claims against PRV. Instead, P&C advised JAMS and Ghaffar of PRV's refusal to participate in the arbitration in a footnote to P&C's Response to Statement of Claim.[15]  PRV now argues that Plaintiff should have undertaken PRV's *own* obligation under JAMS Arbitration Rule 11(b) to submit to the arbitration tribunal any jurisdictional disputes, and absurdly asserts that "[t]hese issues can only be decided in the Arbitration," notwithstanding that PRV has refused to even make an appearance in the arbitration.  In any event, the "issue of whether a party is bound by an arbitration provision in an agreement it did not execute is a threshold issue for the court, not the arbitrator, to decide."  *See In re 215-219 W. 28th St. Mazal Owner LLC*, 177 A.D.3d 482, 483 (N.Y. App. Div. 2019).  In these circumstances, where PRV has refused to participate in the arbitration, there is no basis for staying this action.  PRV cannot have it both ways, where is seeks to separate or distinguish itself from the other Paulson entities that are collectively bound by the arbitration provision of the SPL, while arguing that the issues as to its liability will be determined in the arbitration for purposes of seeking a stay.

PRV harps on its non-signatory status but in the end acknowledges that the issues as to its liability and that of P&C are identical or so closely intertwined as to be indistinguishable, arguing that "PRV's affiliate Paulson & Co. [ ] would be deprived of its contractual right to arbitrate if forced to effectively litigate Ghaffar's claims simultaneously in both federal court and in

---

[15]  P&C stated: "Paulson PRV Holdings Inc. is not a party to the arbitration agreement under which Claimant commenced this arbitration and does not consent to participate in this arbitration." Urgenson Decl., Ex. C (Dkt. 19-4), at 1 n.1.

arbitration." Def. Br., at 16.  Having chosen not to arbitrate this dispute and repeatedly asserted its purported non-party status, PRV cannot now argue that arbitration would be the most efficient way forward, and  delay this proceeding merely because it regrets its decision to avoid arbitration now that a federal suit has been filed.[16]  PRV's concern that "absent a stay, this Court would be forced to decide innumerable factual and legal issues at the very same time that those exact same factual and legal issues are ***also*** being determined at the Arbitration" (Def. Br., at 18) is a result of its own willful and bad faith refusal to arbitrate.

Accordingly, a stay of this action would be contrary to the applicable standard in these particular circumstances, where PRV has an identity of interest with the respondents in the arbitration and a more direct role in the investments at issue but nevertheless refuses to arbitrate, after having failed to raise any jurisdictional defense in the arbitration on its own behalf. Moreover, proceeding with this action is preferable because this forum provides for comprehensive discovery pursuant to the Federal Rules of Civil Procedure, detailed findings of fact and conclusions of law, and broader protection of due process and appellate rights.

Finally, the Court should grant Plaintiff leave to amend if any of its claims are dismissed. "The default rule mandates that leave to amend is to be 'freely given when justice so requires.'" *See, e.g.*, *Stier v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *Schatzki v. Weiser Cap. Mgmt., LLC*, No. 10 CIV. 4685 RWS, 2015 WL 6206438, at *1 (S.D.N.Y. Oct. 16, 2015).

---

[16]    Defendant notes that "courts outside this Circuit have concluded that stays in these circumstances are *mandatory* under Section 3 of the FAA," yet conspicuously fails to cite any binding case law.  *Cf.*, *Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991) (affirming district court ruling "that Lauritzen, a nonparty to the agreement herein that provided for arbitration, was not entitled to a section 3 [mandatory] stay" under the Federal Arbitration Act, 9 U.S.C. § 3 (1988)).

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an order denying Defendant's motion to dismiss or, in the alternative, for a stay pending arbitration, in its entirety.

Dated:  December 11, 2023

Respectfully Submitted,

/s/ Harold D. Vicente Colon
Harold D. Vicente-Colón
USDC -PR 211805

/s/ Harold D. Vicente Gonzalez
Harold D. Vicente Gonzalez
USDC-PR 117711
Vicente Law LLC
Capital Center Sur Ph1-1201
239 Arterial Hostos
Hato Rey
Tel. (787) 751-8000
Fax (787) 756-5250
hdvc@vclawpr.com

/s/ José A. Andréu-Fuentes
José A. Andréu-Fuentes
USDC 204409

/s/ Alfredo M. Umpierre-Soler
Alfredo M. Umpierre-Solor
USDC-PR 226205
Andréu & Sagardia
261 Ave. Domenech
San Juan, PR 00918-3518
787.754.1777
jaf@andreu-sagardia.com

RUSSO PLLC
/s/ Martin P. Russo
Martin P. Russo (Pro Hac Vice)
Robert Sidorsky (Pro Hac Vice)
Daniel Branower (Pro Hac Vice)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com

FARRELL FRITZ, P.C.
By: /s/ Peter Mahler
Peter A. Mahler (Pro Hac Vice)
622 Third Avenue, Suite 37200
New York, New York 10017
(212) 687-1230